

**NUMBER 13-12-00592-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI − EDINBURG**

---

**THE STATE OF TEXAS,** **Appellant,**

**v.**

**JOSEPH MONTANO,** **Appellee.**

---

**On appeal from the 36th District Court
of San Patricio County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellee, Joseph Montano, was charged with felony driving while intoxicated as a repeat felony offender. *See* TEX. PENAL CODE ANN. § 49.09 (West 2011). Appellee filed a motion to suppress the initial traffic stop arguing that the officer lacked probable cause to initiate the stop. The trial court found that appellee's actions did not constitute

a violation of Texas Transportation Code section 547.333, and therefore granted his motion to suppress. *See* TEX. TRANSP. CODE ANN. § 547.333(c)(1)(B) (West 2011).

By a single issue, the State appeals the trial court's order granting appellee's motion to suppress. We affirm.

## I. BACKGROUND

On January 14, 2012, at approximately 2:56 a.m., appellee was driving down North Frio Street in Mathis, Texas, while displaying his high beam (bright) lights. At the hearing on the appellee's motion to suppress, Officer Frank Sanchez, the arresting officer in this case, testified that he was stopped at the stop sign at the intersection of Laredo Street and North Frio Street, sitting perpendicular to Frio Street, when he noticed appellee's vehicle approaching the intersection. He further testified that at no point was he oncoming to appellee's vehicle, nor was appellee's vehicle behind his at any point. At this time, appellee and Officer Sanchez's vehicles were the only vehicles on the road.

As appellee's vehicle approached the intersection of North Frio and Laredo streets, Officer Sanchez turned his head to look toward appellee's vehicle and the bright lights from appellee's vehicle shone into the officer's eyes. Believing that a traffic violation had occurred under section 547.333 of the Texas Transportation Code, which sets forth the proper settings for multiple-beam lighting while driving, the officer then turned right on North Frio Street after appellee's vehicle had passed the intersection of Laredo and North Frio and began to follow appellee's vehicle. After following the vehicle for some time, the officer initiated a traffic stop of appellee. Upon contact with

2

appellee, the officer noticed signs of intoxication and arrested appellee for felony driving while intoxicated as a repeat offender. *See* TEX. PENAL CODE ANN. § 49.09.

Appellee filed a motion to suppress the traffic stop arguing that he did not commit a traffic offense under the Texas Transportation Code section 547.333. The trial court granted the motion to suppress finding that although appellee's bright lights were projected into the officer's eyes, the officer was not an approaching vehicle operator because his vehicle was stopped, perpendicular to appellee's vehicle, at an intersection, and therefore the officer lacked probable cause to initiate the stop. The State now appeals the trial court's ruling arguing that it abused its discretion in granting appellee's motion to suppress.

## II.    STANDARD OF REVIEW

We apply a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d at 88–89. In a suppression hearing, the trial judge serves as the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). "A suppression ruling includes two types of trial-judge rulings; historical factual findings, often based on credibility determinations (subject to an abuse-of-discretion review), and ultimate legal rulings that determine whether reasonable suspicion or probable cause existed (subject to *de novo* review)." *State v. Mendoza*, 365 S.W.3d 666, 669 (Tex. Crim. App. 2012); *see also Guzman*, 955 S.W.2d at 85, 87 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). When the trial court makes explicit findings of fact, as it has done in the instant case, we give deference to those

3

findings. *State v. Sheppard*, 217 S.W.3d 281, 286 (Tex. Crim. App. 2008). We view the record in the light most favorable to the trial court's ruling, and we will sustain its ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

### III. APPLICABLE LAW

A police officer may lawfully stop a motorist who has committed a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop is a detention, and therefore must be reasonable under both the United States and Texas Constitutions. U.S. CONST. amend. IV; *see Terry v. Ohio*, 392 U.S. 1, 16 (1968); TEX. CONST. art. I, § 9; *Davis v. State*, 947 S.W.2d 940, 945 (Tex. Crim. App. 1997). When a police officer stops a defendant without a warrant and without the defendant's consent, the State has the burden of proving the reasonableness of the stop at a suppression hearing. *Russell v. State,* 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986); *Reha v. State*, 99 S.W.3d 373, 375 (Tex. App.—Corpus Christi 2003, no pet.); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd). As a general matter, a stop is reasonable when a police officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); *see also Hale v. State*, Nos. 13-01-251-CR, 13-01-252-CR, 2002 Tex. App. LEXIS 2912, at *9 (Tex. App.—Corpus Christi, Apr. 25, 2002) (mem. op., not designated for publication.)

The State is not required to prove that an individual actually committed a traffic violation, but only that the officer's stop was based on a reasonable belief that a

4

violation was in progress. *Tex. Dep't of Pub. Safety v. Fisher,* 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.); *see also Texas Dep't. of Pub. Safety v. Echols*, No. 13-06-414-CV, 2007 WL 2012875 (Tex. App.—Corpus Christi July 12, 2007, no pet.) (mem. op., not designated for publication) (citing *Green v. State,* 93 S.W.3d 541, 544 (Tex. App.—Texarkana 2002, pet. ref'd). However, an officer's reasonable suspicion that a motorist has committed an alleged traffic violation cannot be based on a mistaken understanding of traffic laws. *United States v. Granado*, 302 F.3d 421, 423 (5th Cir. 2002); *United States v. Lopez-Valdez,* 178 F.3d 282, 289 (5th Cir. 1999); *Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd) (reasoning that to hold that "an officer's ignorance of the law will somehow satisfy the Fourth Amendment and rise to the level of reasonable suspicion . . . would transform the Fourth Amendment's objective standard into a subjective standard dependent on the whims of the police's "understanding" of the law"); *Goudeau*, 209 S.W.3d at 716. Furthermore, an officer's honest yet mistaken understanding of the traffic law that serves as his basis for initiating a stop is not an exception to the reasonable suspicion requirement. *Lopez-Valdez*, 178 F.3d at 289 (refusing to find a good-faith exception to the exclusionary rule when an officer's subjective belief that a traffic violation has occurred serves as the basis for his stop, when in fact, there has been no violation).

## IV. DISCUSSION

The State argues that Officer Sanchez's traffic stop of appellee was reasonable and that, therefore, the trial court erred by granting appellee's motion to suppress. We disagree.

5

Based on Officer Sanchez's testimony, the trial court concluded that because Officer Sanchez was stopped perpendicular to appellee and was not an approaching vehicle operator, the evidence did not support the officer's reasonable belief that a violation of the traffic code had occurred. Officer Sanchez testified that he stopped appellee based on his belief that he had committed a violation of Texas Transportation Code § 547.333(c)(1)(B), which requires that an operator of a motor vehicle "approaching an oncoming vehicle" within 500 feet shall distribute light so that no part of the "high-intensity portion of the lamp projects into the eyes of an approaching vehicle operator."[1] TEX. TRANSP. CODE ANN. § 547.333(c)(1)(B). Therefore, the statute sets out that to commit a traffic violation, an offender must project high-intensity light into the eyes of an approaching vehicle operator, and that vehicle operator must be oncoming. *Id.* Officer Sanchez explicitly testified that he was not an oncoming vehicle operator and that he was stopped perpendicular to appellant.[2] Further, Officer Sanchez testified that,

---

[1] The State also claims that the trial court improperly applied the higher standard of probable cause, rather than reasonable suspicion. Notably, the trial court's discussion of probable cause was appropriate, as under Texas and federal case law, "[a]s a general matter, a stop is reasonable when a police officer has probable cause to believe that a traffic violation has occurred." *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); *Whren v. United States*, 517 U.S. 806, 810 (1996). Regardless, whether we apply reasonable suspicion or probable cause, the law central to our analysis is the same, that an officer's belief that an alleged traffic violation has occurred cannot be based on a mistaken understanding of traffic laws. *United States. v. Granado*, 302 F.3d 421,423 (5th Cir. 2002); *United States v. Lopez-Valdez,* 178 F.3d 282, 289 (5th Cir. 1999); *Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd); *Goudeau*, 209 S.W.3d at 716; *see also Neal v. State,* 256 S.W.3d 264, 280 (Tex. Crim. App. 2008) ("Reasonable suspicion exists if an officer has specific and articulable facts that, taken together with rational inferences from those facts, would lead the officer to reasonably suspect that a particular person has engaged or soon will engage in criminal activity.").

[2] Regardless, relying on *Seat v. State*, the State contends that the trial court misinterpreted the traffic code in finding that Officer Sanchez was not an approaching vehicle. The Court in *Seat v. State*, however, applied a different part of the statute, addressing different conduct. *See Seat v. State,* No. 07–05–0429–CR, 2007 Tex. App. LEXIS 9426, at *6–10 (Tex. App.—Amarillo Nov. 30, 2007, no pet.) (mem. op., not designated for publication). The court affirmed the denial of appellant's motion to suppress evidence resulting from an officer's traffic stop based on a violation of Texas Transportation Code section 547.333(c)(2), which states that "an operator approaching a vehicle from the rear within 300 feet may not select the uppermost distribution of light." *Id.*; *See* TEX. TRANSPORTATION CODE ANN. §§ 547.333 (c)(2), 547.333 (c)(1). There is no requirement under section 547.333(c)(2) that there be an oncoming

6

at the time of the incident, there were no other vehicles on the road that could have been oncoming to or approaching appellee's vehicle. Therefore, because Officer Sanchez testified that there was no oncoming or approaching vehicle, no objective facts existed in the record to support probable cause or reasonable suspicion, based on a proper understanding of the law, that a traffic violation had occurred. *See* TEX. TRANSP. CODE ANN. § 547.333 (c)(1)(B); *Granado*, 302 F.3d at 423; *see also Lopez-Valdez*, 178 F.3d at 289.

We overrule the State's sole issue.

## V.    CONCLUSION

We affirm.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of July, 2013.

---

approaching vehicle operator. Therefore, in the present case, the State's reference to *Seat* has no applicability to the trial court's finding that the officer was not an oncoming approaching vehicle under section 547.33(c)(1). Instead, the State's reference to the *Seat* case only serves to highlight that there must be an oncoming approaching vehicle for a violation of section 547.333(c)(1) to occur, as if this was not required, the section immediately following, 547.33(c)(2), prohibiting the use of high beams when approaching a vehicle from the rear, would be entirely superfluous.